# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**GLENN LEO WILLIAMS**                              **CIVIL ACTION**

**VERSUS**                                          **NO. 15-3565**

**BURL CAIN, WARDEN**                               **SECTION: "R"(3)**

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Glenn Leo Williams, is a state prisoner incarcerated at the Louisiana State Police Barracks in Zachary, Louisiana. On June 7, 2002, he was convicted of second degree murder under Louisiana law.[1] On June 20, 2002, he was sentenced to a term of life imprisonment without benefit of probation, parole, or suspension of sentence.[2] On October 1, 2003, the Louisiana Fourth Circuit Court of Appeal affirmed his conviction and sentence.[3] The court thereafter granted his

---

[1] State Rec., Vol. 1 of 13, minute entry dated June 7, 2002.
[2] State Rec., Vol. 1 of 13, minute entry dated June 20, 2002.
[3] State v. Williams, No. 2003-KA-0091 (La. App. 4th Cir. Oct. 1, 2003); State Rec., Vol. 12 of 13.

petition for rehearing but then again affirmed his conviction and sentence on January 14, 2004.[4] The Louisiana Supreme Court denied his related writ application on June 25, 2004,[5] and the United States Supreme Court denied his petition for writ of certiorari on January 10, 2005.[6]

On July 18, 2005, petitioner filed with the state district court a *pro se* application for post-conviction relief,[7] and that application was later supplemented by counsel.[8]  The *pro se* application was denied on November 9, 2007,[9] and the counseled supplemental application was denied on May 6, 2014.[10]  Petitioner's related writ applications were then likewise denied by the Louisiana Fourth Circuit Court of Appeal on July 28, 2014,[11] and by the Louisiana Supreme Court on July 31, 2015.[12]

Petitioner thereafter filed this federal application seeking habeas corpus relief.[13]  The state filed a response conceding that the application is timely but arguing that the claims have no merit.[14] Petitioner filed a reply to the state's response.[15]

## Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions

---

[4] State v. Williams, 866 So.2d 296 (La. App. 4th Cir. 2004); State Rec., Vol. 12 of 13.
[5] State v. Williams, 876 So.2d 831 (La. 2004); State Rec., Vol. 12 of 13.
[6] Williams v. Louisiana, 543 U.S. 1062 (2005).
[7] State Rec., Vol. 13 of 13.
[8] State Rec., Vol. 13 of 13.
[9] State Rec., Vol. 1 of 13, Docket Master entry for November 9, 2007.
[10] State Rec., Vol. 13 of 13, Judgment dated May 6, 2014.
[11] State v. Williams, No. 2014-K-0704 (La. App. 4th Cir. July 28, 2014); State Rec., Vol. 13 of 13.
[12] State ex rel. Williams v. State, 174 So.3d 1145 (La. 2015); State Rec., Vol. 13 of 13.
[13] Rec. Doc. 4.
[14] Rec. Doc. 12.
[15] Rec. Doc. 13.

of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."  Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases.  A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially

> indistinguishable from a decision of the [United States] Supreme Court and
> nevertheless arrives at a result different from [United States] Supreme Court
> precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets,

and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has

held: "[A] state-court decision is an unreasonable application of our clearly established precedent

if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a

particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1706 (2014). However, the

Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court
> unreasonably applies this Court's precedent; it does not require state courts to
> extend that precedent or license federal courts to treat the failure to do so as error.
> Thus, if a habeas court must extend a rationale before it can apply to the facts at
> hand, then by definition the rationale was not clearly established at the time of the
> state-court decision. AEDPA's carefully constructed framework would be
> undermined if habeas courts introduced rules not clearly established under the guise
> of extensions to existing law.

Id. (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no

clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said

that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten,

552 U.S. 120, 126 (2008) (quotation marks and brackets omitted). The Supreme Court has also

expressly cautioned that "an unreasonable application is different from an incorrect one." Bell,

535 U.S. at 694. Accordingly, a state court's merely incorrect application of Supreme Court

precedent simply does not warrant habeas relief. Puckett v. Epps, 641 F.3d 657, 663 (5th Cir.

2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect

application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein. White v. Woodall, 134 S. Ct. 1697, 1701 (2014).

## Facts

The facts of this case, as established through the testimony adduced at trial, are fairly straightforward: Petitioner and Natalie Rand dated "off and on." On July 9, 1995, he came to her

residence carrying a bundle which he wanted her to store inside. She refused, and he pushed her aside, walking inside. At that point, her mother, Marva Ann Sherman, intervened and told petitioner that he was not going to store his items in the residence. Petitioner and Ms. Sherman exited the residence. As Ms. Sherman then began calling the police, petitioner started "hollering and cursing," causing Ms. Rand to go upstairs to get her uncle, Eddie Sherman. When Mr. Sherman then came downstairs, he was shot by petitioner, and everyone other than petitioner retreated inside. However, Jerry Durham, Ms. Rand's stepfather, then opened the door again, whereupon he was also shot by petitioner. When Ms. Rand then went outside to get another telephone from a neighbor, petitioner began shooting at her as well, but without success. After she fell, he hit her on the head. He then left, and Ms. Rand again retreated inside. Shortly thereafter, the police arrived. Mr. Sherman died as a result of his wounds from the shooting, but Mr. Durham survived.

## Petitioner's Claims

## Ineffective Assistance of Counsel

In his first three claims, petitioner contends that he received ineffective assistance of counsel. In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating such claims. Specifically, a petitioner seeking relief must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. Id. at 697. A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient

showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793.

Because petitioner's ineffective assistance claims were denied on the merits by the state court, and because such claims present a mixed question of law and fact, this Court must defer to the state court decision unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).[16] Moreover, the United States Supreme Court has explained that, under the AEDPA, federal habeas corpus review of an ineffective assistance of counsel claim is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United

---

[16] As will be noted below, it is true that the state district court issued no written opinion when denying petitioner's first two ineffective assistance claims and that neither the Louisiana Fourth Circuit Court of Appeal nor the Louisiana Supreme Court issued written reasons when denying relief with respect to any of the three claims. Nevertheless, the United States Supreme Court has held that, in such instances, the claims are still subject to the AEDPA's deferential standards of review because they are presumed to have been denied on the merits:

> By its terms § 2254(d) bars relitigation of any claim "adjudicated on the merits" in state court, subject only to the exceptions in §§ 2254(d)(1) and (2). There is no text in the statute requiring a statement of reasons. The statute refers only to a "decision," which resulted from an "adjudication." As every Court of Appeals to consider the issue has recognized, determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning. And as this Court has observed, a state court need not cite or even be aware of our cases under § 2254(d). Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief. This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for § 2254(d) applies when a "claim," not a component of one, has been adjudicated.
>     ….
> There is no merit either in [petitioner's] argument that § 2254(d) is inapplicable because the [state court] did not say it was adjudicating his claim "on the merits." The state court did not say it was denying the claim for any other reason. When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary. Cf. Harris v. Reed, 489 U.S. 255, 265, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis).

Harrington v. Richter, 562 U.S. 86, 98-99 (2011) (citations omitted).

States district court.  Under AEDPA, though, it is a necessary premise that the two questions are different.  For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.  A state court must be granted a deference and latitude that are not in operation when the case involves review under the <u>Strickland</u> standard itself.

A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision.  <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004).  And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."  <u>Ibid</u>.  "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court."  <u>Knowles v. Mirzayance</u>, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

<u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011) (citation omitted).  The Supreme Court then explained:

Surmounting <u>Strickland</u>'s high bar is never an easy task.  An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the <u>Strickland</u> standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve.  Even under *de novo* review, the standard for judging counsel's representation is a most deferential one.  Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.  It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence.  The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult.  *The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.*  The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d).  *When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.*

Id. at 105 (citations omitted; emphasis added).  Therefore, on a habeas review of an ineffective assistance claim, "federal courts are to afford *both* the state court *and* the defense attorney the benefit of the doubt."  Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016) (emphasis added; quotation marks omitted).  For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted with respect to petitioner's ineffective assistance of counsel claims.

Petitioner's first two claims were asserted in his *pro se* state post-conviction application. In his first claim, he argued that his counsel was ineffective for refusing to allow petitioner to testify at trial.  In his second claim, he argued that counsel was ineffective for failing to have a knife found on the scene tested for the victim's fingerprints and for failing to present a claim of self-defense at trial.  Those two claims were denied without reasons assigned by the state district court,[17] the Louisiana Fourth Circuit Court of Appeal,[18] and the Louisiana Supreme Court.[19]

With respect to his first claim, petitioner alleges:  "[C]ounsel's opinion was that petitioner had a criminal record and suffered from mental deficiencies and firmly told petitioner he would refuse to let him testify."[20]  Regarding such claims, the law is clear:  "[I]t cannot be doubted that a defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense."  Rock v. Arkansas, 483 U.S. 44, 49 (1987).  However, petitioner failed to provide any colorable evidence in support of this claim.[21]  Without more, such a claim simply cannot succeed.

---

[17] State Rec., Vol. 1 of 13, Docket Master entry for November 9, 2007.
[18] State v. Williams, No. 2014-K-0704 (La. App. 4th Cir. July 28, 2014); State Rec., Vol. 13 of 13.
[19] State *ex rel.* Williams v. State, 174 So.3d 1145 (La. 2015); State Rec., Vol. 13 of 13.
[20] Rec. Doc. 4, p. 24
[21] The only "evidence" petitioner offered was the following exchange from the transcript:

    MR. BOYER [defense counsel]:
        Judge, my client says he wants to say something to you.  I don't know what –

As the United States Seventh Circuit Court of Appeals noted in a case in which a petitioner alleged

that he had been denied the right to testify by his counsel:

> There is grave practical difficulty in establishing a mechanism that will protect a criminal defendant's personal right (that is, a right not waivable by counsel) to testify on his own behalf without rendering the criminal process unworkable. It is extremely common for criminal defendants not to testify, and there are good reasons for this, as we have seen. Yet it is simple enough after being convicted for the defendant to say, "My lawyer wouldn't let me testify. Therefore I'm entitled to a new trial." ...
>
> ... [A] barebones assertion by a defendant, albeit made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him. It is just too facile a tactic to be allowed to succeed. Some greater particularity is necessary – and also we think some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify – to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim.

Underwood v. Clark, 939 F.2d 473, 475-76 (7th Cir. 1991); accord Richthofen v. Cain, Civ. Action

No. 05-5701, 2008 WL 630477, at *44-45 (E.D. La. Mar. 7, 2008); Curtis v. Cain, Civ. Action

No. 06-1676, 2008 WL 482849, at *8-9 (E.D. La. Feb. 13, 2008); Baker v. Cain, Civ. Action No.

---

THE COURT:
    I don't have anything to say to Mr. Williams. That's why he was [sic] a lawyer.

MR. BOYER:
    I understand that and I told him that, Judge.

THE COURT:
    Mr. Williams, if you have anything to say, you say it to your lawyer, sir.

State Rec., Vol. 11 of 13, trial transcript, pp. 9-10. Petitioner suggests that this was his attempt to inform the trial court of his desire to testify. However, there is absolutely nothing in the transcript or from the circumstances and context of the remarks to support that suggestion. The exchange occurred not during a point in the trial at which testimony or evidence was being discussed; rather, it occurred immediately after the parties had placed on the record the fact that petitioner rejected the state's offer of a plea bargain. If there is any inference to be drawn from the exchange, the most reasonable inference is that petitioner simply wanted to explain why he had decided to reject the plea bargain. The bottom line is that the exchange in question proves nothing, and certainly does not prove that counsel was refusing to permit petitioner to testify.

06-2039, 2007 WL 2174959, at *10-11 (E.D. La. July 26, 2007); <u>White v. Cain</u>, Civ. Action No. 06-1576, 2006 WL 3703240, at *4-5 (E.D. La. Dec. 11, 2006); <u>Turcios v. Dretke</u>, No. Civ. A. H-97-0515, 2005 WL 3263918 (S.D. Tex. Nov. 29, 2005).

To the extent that petitioner may perhaps also be claiming that his counsel was ineffective for failing to call him to testify, that contention likewise has no merit. A decision whether to put a criminal defendant on the stand "is a 'judgment call' which should not easily be condemned with the benefit of hindsight." <u>United States v. Garcia</u>, 762 F.2d 1222, 1226 (5th Cir. 1985); <u>accord United States v. Mullins</u>, 315 F.3d 449, 453 (5th Cir. 2002); <u>Amos v. Cain</u>, Civ. Action No. 04-2029, 2008 WL 782472, at *11 (E.D. La. Mar. 20, 2008); <u>Curtis v. Cain</u>, Civ. Action No. 06-1676, 2008 WL 482849, at *10 (E.D. La. Feb. 13, 2008). Further, such a matter is inherently one of trial strategy, and federal habeas courts generally are not to second-guess counsel's decisions on matters of trial tactics; rather, courts are to employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy. <u>Strickland</u>, 466 U.S. at 689.

The instant habeas proceeding is far removed from the context of the actual trial, and this Court has no mechanism available to fairly judge counsel's assessment of his own client at the time and his view of the strength of the prosecution's case as it was presented live. Under these circumstances and in light of the foregoing law regarding the deference that must be accorded to counsel's strategic decisions, the Court declines to second-guess counsel's decision not to put petitioner on the stand, especially in light of his admitted mental problems and his potentially prejudicial criminal history. This Court simply cannot find that counsel performed deficiently by failing to have petitioner testify at trial under these circumstances.

In his second claim, petitioner argues that counsel was ineffective for failing to have a knife found on the scene tested for the victim's fingerprints and for failing to present a claim of self-defense at trial.  However, this claim fails because petitioner's suggestion that an examination of the knife would reveal the victim's fingerprints is purely speculative.  Where, as here, a petitioner has not demonstrated what further investigation would in fact have shown, he has not established either deficient performance or resulting prejudice. See, e.g., Diaz v. Quarterman, 239 Fed. App'x 886, 890 (5th Cir. 2007) ("A petitioner cannot show prejudice with respect to a claim that counsel failed to investigate and present mitigating evidence without adducing what the investigation would have shown."); Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir. 1998) (rejecting a claim of alleged deficient performance for failure to test for "powder burns" where the petitioner "merely asserts that there might have been powder burns"); England v. Cain, Civ. Action No. 15-0961, 2015 WL 5971196, at *11 (E.D. La. Oct. 14, 2015) ("It is well settled that a habeas petitioner cannot show prejudice with respect to a claim that counsel failed to investigate a defense without adducing what the investigation would have shown.  Instead, to prevail on such a claim, the petitioner must provide factual support as to what exculpatory evidence further investigation would have revealed." (citations omitted)); Harris v.Cain, Civ. Action No. 12-0297, 2014 WL 2465538, at *15 (M.D. La. May 30, 2014) ("A petitioner cannot show prejudice with respect to a claim that counsel failed to investigate without adducing what the investigation would have shown. … Mere speculation regarding what [testing] may have shown is not sufficient to establish deficient performance on the part of the petitioner's attorney." (citations omitted)).

As for petitioner's contention that counsel should have asserted a claim of self-defense, he has likewise fallen far short of meeting his burden to establish that his counsel performed

deficiently in this regard. He has pointed to no evidence which would support such a defense, and the eyewitness testimony at trial uniformly contradicted any suggestion that petitioner acted in self-defense. Sometimes, as is evidently the case here, when representing a seemingly guilty client, counsel's only choice is to vigorously test the state's case and argue to the jury that the state has failed to carry its burden of proving that the accused is guilty beyond a reasonable doubt. Simply because counsel was unable to fashion a nonexistent defense out of whole cloth does not mean that he performed deficiently. See, e.g., Amos v. Cain, Civ. Action No. 04-2029, 2008 WL 782472, at *9 (E.D. La. Mar. 20, 2008).

In his third claim, petitioner argues that counsel was ineffective in five specific respects. This multi-pronged claim was asserted in the counseled supplemental post-conviction application and denied by the state district court with the following reasons assigned:

> First, Mr. Williams asserts a claim of ineffective assistance of counsel. Within this claim, he urges the following five (5) sub-claims: (1) "[D]efense failed to investigate and prepare Expert Witness for intoxication defense, prejudicing the defendant by not effectively presenting the defense and allowing State to present a rebuttal witness;" (2) Defense counsel failed to call Dr. Richard Garey; (3) Defense counsel failed to request a continuance; (4) "[D]efense counsel was ineffective for stipulating to competency testimony and failing to object to competency finding;" and (5) Defense counsel failed to investigate the case, confer with defendant and effectively represented to the defendant the need to accept the plea bargain.
>
> The test for effectiveness of counsel is two-pronged: (1) the defendant must show that counsel made errors so serious that he was not functioning as guaranteed by the Sixth Amendment; and (2) the defendant must show that the deficient performance prejudiced the defense by proving that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.[FN 6] The defendant has the burden of showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." A "reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome."[FN 7] The assessment of an attorney's performance requires that his conduct be evaluated from counsel's perspective at the time of the occurrence.[FN 8] A reviewing court must give great deference to trial counsel's judgment, tactical decisions and trial strategy, with a strong presumption that counsel has exercised reasonable professional judgment.[FN 9]

14

[FN 6]  <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); <u>State *ex rel.* Busby v. Butler</u>, 538 So. 2d 164 (La. 1988).

[FN 7]  <u>State v. Porche</u>, 780 So. 2d 1152, 2000-1391 (La. App. 4 Cir. 2/14/01) (quoting <u>Strickland</u>, 466 U.S. at 693, 104 S.Ct. at 2068).

[FN 8]  <u>Mattheson v. King</u>, 751 F. 2d 1432 (5th Cir. 1984).

[FN 9]  <u>Ricalday v. Procunier</u>, 736 F. 2d 203 (5th Cir. 1984); <u>State v. Thompson</u>, 544 So.2d 421 (La. App. 3d Cir. 1989) <u>writ denied</u>, 550 So.2d 626.

Louisiana Code of Criminal Procedure Art. 930(2), Burden of Proof, states:

The petitioner in an application for post conviction relief shall have the burden of proving that relief should be granted.

First, Mr. Williams believes that "[d]efense counsel failed to investigate and prepare [the] Expert Witness for [an] intoxication defense, [thus,] prejudicing the defendant by not effectively presenting the defense and allowing State to present a rebuttal witness."  Mr. Williams argues that "[a]s a result of this ineffective preparation, the State directly undermined the substance of the defense and the credibility of Dr. Marc Zimmerman through Dr. Harminder Mallik…."

In Mr. Williams' direct appeal, <u>State v. Williams</u>, No. 2003-KA-0081 (La. App. 4 Cir. 2003), the Fourth Circuit discussed the testimony of the expert witness and rebuttal witness as follows:

A review of the record indicates that on June 4, 2002, at the close of jury selection, Dr. Sarah Deland, defendant's expert witness, appeared with her attorney and asserted that she was not adequately prepared to testify at trial.  On June 5, 2002, the defendant moved for a mistrial, arguing that Dr. Deland's testimony was critical to the defendant's case.  Upon denial of his motion for mistrial, Defense counsel informed the trial court that in place of Dr. Deland the defense would call Dr. Marc Zimmerman and Dr. Richard Garey as medical expert witnesses.  The trial court granted Defense counsel's request for a one-day recess to prepare these witnesses.

Disclosure of a rebuttal witness is not required prior to trial and there is no indication in the record that the state arbitrarily and

capriciously violated the court-sanctioned agreement for mutual disclosure of witnesses.

As a result of Dr. Deland's withdrawal from the case, the Court granted a one day recess for Defense counsel to prepare Dr. Zimmerman. As noted by Mr. Williams, during the trial, Dr. Zimmerman did in fact testify on Mr. Williams' behalf.

In response to Dr. Zimmerman's testimony, the State called Dr. Mallik to testify as a rebuttal witness. Although Mr. Williams believes that Defense counsel's representation was ineffective because he failed to object to the State's rebuttal witness, as stated by the Fourth Circuit, disclosure of a rebuttal witness is not required prior to trial and there is no indication that the State violated the Court's sanctioned agreement for mutual disclosure of witnesses.

Second, Mr. Williams asserts that Defense counsel failed to request a continuance when Dr. Deland withdrew as the expert witness. Under Louisiana Code of Criminal Procedure Art. 708, "Continuance and recess; definitions," a continuance cannot be granted after the trial or hearing has commenced. However, a recess, which is a temporary adjournment of a trial, can be granted after a trial or hearing has commenced. In this instance, at the close of jury selection, Dr. Deland informed the Court that she would not be able to testify. As the trial had commenced, a continuance could not be granted pursuant to Louisiana Code of Criminal Procedure Art. 708. Instead of requesting a continuance, Defense counsel requested a mistrial, which the Court denied as there is no basis for such. But, the Court did adjourn the trial open for one day to allow Defense counsel to prepare Dr. Zimmerman. The adjournment was proper under the rules allowed by the Code of Criminal Procedure.

Lastly, Mr. Williams does not meet his burden of proof to establish that Defense counsel's alleged errors of failing to call Dr. Richard Garey, failing to object to the competency finding, failing to investigate the case, and failing to convey to defendant the need to accept the plea bargain were so serious that counsel was not functioning as guaranteed by the Sixth Amendment or that any deficient performance prejudiced his defense. Mr. Williams does not provide any factual basis or arguments in support of these assertions and therefore has not proven that but for the alleged failures, there was a reasonable probability that the result would have been different.

Based on the foregoing, Mr. Williams' claim of ineffective assistance of counsel is denied.[22]

---

[22] State Rec., Vol. 13 of 13, Judgment dated May 6, 2014, pp. 2-5 (footnotes omitted).

Petitioner's related writ applications were then likewise denied without additional reasons assigned by the Louisiana Fourth Circuit Court of Appeal[23] and the Louisiana Supreme Court.[24]

As noted in the state district court's judgment, several of petitioner's contentions with respect to this claim arise in connection with the assertion of an intoxication defense at trial. To understand the contentions, one must first be aware of the following sequence of events: (1) The defense filed a "Notice of Defense Based Upon Mental Condition" which placed the court on notice that the defense planned to introduce evidence that petitioner was asserting a defense that he was so intoxicated at the time of the offense as to preclude him from having the mental state required for the crime charged;[25] (2) at the close of jury selection on June 4, 2002, Dr. Sarah Deland, the expert the defense planned to call regarding the intoxication defense, asserted to the court that she was not adequately prepared to testify at trial;[26] (3) the following day, the defense filed a "Motion for Mistrial," arguing that Deland was a crucial witness and the defense could not proceed to trial without her;[27] (4) the motion for mistrial was denied, at which point the defense indicated that it would use Dr. Marc Zimmerman and Dr. Richard Garey in place of Dr. Deland;[28] (5) Dr. Zimmerman ultimately testified at trial for the defense,[29] but Dr. Garey was not called to testify; (6) the prosecution called Dr. Harminder Mallik to rebut Dr. Zimmerman's testimony, at which time the defense objected, but the objection was overruled;[30] (7) Dr. Mallik then testified

---

[23] State v. Williams, No. 2014-K-0704 (La. App. 4th Cir. July 28, 2014); State Rec., Vol. 13 of 13.
[24] State ex rel. Williams v. State, 174 So.3d 1145 (La. 2015); State Rec., Vol. 13 of 13.
[25] State Rec., Vol. 7 of 13, Notice of Defense Based Upon Mental Condition.
[26] See State v. Williams, No. 2003-KA-0091, at pp. 2-3 (La. App. 4th Cir. Oct. 1, 2003); State Rec., Vol. 12 of 13.
[27] State Rec., Vol. 2 of 13, Motion for Mistrial.
[28] State Rec., Volume 11 of 13, trial transcript, pp. 16-22.
[29] State Rec., Vol. 12 of 13, trial transcript, pp, 276-328.
[30] State Rec., Vol. 12 of 13, trial transcript, pp. 333-38.

as a rebuttal witness for the prosecution;[31] (8) on direct appeal, the defense argued that Dr. Mallik should not have been allowed to testify, but the Louisiana Fourth Circuit Court of Appeal rejected that claim,[32] as did the Louisiana Supreme Court.[33]

Petitioner first contends that counsel was ineffective for failing to adequately prepare and arrange for Dr. Deland to testify as originally planned. However, petitioner failed to provide any evidence in support of that contention; on the contrary, he presented no evidence whatsoever as to what efforts counsel took or failed to take regarding the preparation of Dr. Deland. Without such evidence, he cannot show that counsel performed deficiently.[34]

Further, even if petitioner had made that showing, he would then additionally have to prove that prejudice *actually* resulted from Dr. Deland's failure to testify. He has made no such showing. Once Dr. Deland refused to testify, defense counsel arranged for Dr. Zimmerman to testify instead. Petitioner has not established prejudice by showing that Dr. Deland would have been a better or more convincing witness concerning the intoxication defense. Although he speculates that Dr. Deland would have been better, it is beyond cavil that such bare speculation does not suffice to meet his burden of proof. See Thomas v. Cain, Civ. Action No. 09-4425, 2009 WL 4799203, at *9 (E.D. La. Dec. 9, 2009).

---

[31] State Rec., Vol. 12 of 13, trial transcript, pp. 338-53.

[32] State v. Williams, No. 2003-KA-0091, at pp. 2-4 (La. App. 4th Cir. Oct. 1, 2003); State Rec., Vol. 12 of 13.

[33] State v. Williams, 876 So.2d 831 (La. 2004); State Rec., Vol. 12 of 13.

[34] The only information on this point that can be gleaned from the record consists of defense counsel's assertions contained in his Motion for Mistrial, State Rec., Vol. 2 of 13. In that motion, defense counsel indicated that in mid-May of 2002 the trial was continued to June 4. Defense counsel further indicated that he advised Dr. Deland of the new date at that time and met with her on the morning of June 4, and "[n]ever once did Dr. Deland indicate or claim she was unprepared to proceed to trial." She did not make such a claim until approximately 4:00 p.m. on June 4, when she appeared at court with her attorney and stated that she was unprepared. In his Motion for Mistrial, defense counsel suggested nefarious motives for Dr. Deland's abrupt change of heart concerning testifying; however, her true reasons cannot be gleaned with certainty from the record before this Court.

As to petitioner's contention that counsel was ineffective for "allowing" the state to present Dr. Mallik as a rebuttal witness, that contention is likewise meritless. Defense counsel did not "allow" Dr. Mallik to testify – on the contrary, defense counsel *objected*, but that objection was simply overruled by the trial judge.[35] Further, the Louisiana Fourth Circuit Court of Appeal held that Dr. Mallik's testimony was proper under Louisiana law,[36] and the Louisiana Supreme Court denied petitioner's related writ application challenging that finding.[37] Under these circumstances, there is simply no basis for finding counsel ineffective in this respect.

Petitioner next contends that that counsel was ineffective for failing to call Dr. Garey to testify in addition to Dr. Zimmerman. However, as the United States Fifth Circuit Court of Appeals has explained:

> Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain. For this reason, *we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense.* This requirement applies to both uncalled lay and expert witnesses.

Woodfox v. Cain, 609 F.3d 774, 808 (5th Cir. 2010) (citations, quotation marks, and brackets omitted; emphasis added); accord Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done

---

[35] State Rec., Vol. 12 of 13, trial transcript, pp. 333-38.
[36] State v. Williams, No. 2003-KA-0091, at pp. 2-4 (La. App. 4th Cir. Oct. 1, 2003); State Rec., Vol. 12 of 13.
[37] State v. Williams, 876 So.2d 831 (La. 2004); State Rec., Vol. 12 of 13.

so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.").

Here, petitioner presented no evidence demonstrating that Dr. Garey would have testified in a manner beneficial to the defense or would have added anything of value above and beyond the testimony of Dr. Zimmerman. Therefore, again, petitioner obviously failed to meet his burden of proof with respect to this claim. See, e.g., United States v. Cockrell, 720 F.2d 1423, 1427 (5th Cir. 1983) (courts view "with great caution claims of ineffective assistance of counsel when the only evidence of a missing witness's testimony is from the defendant"); Buniff v. Cain, Civ. Action No. 07-1779, 2011 WL 2669277, at *3 (E.D. La. July 7, 2011); Anthony v. Cain, Civ. Action No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue."); Combs v. United States, Nos. 3:08-CV-0032 and 3:03-CR-0188, 2009 WL 2151844, at *10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); Harris v. Director, TDCJ-CID, No. 6:06cv490, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009) ("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance.").

Petitioner also argues that counsel was ineffective for failing to argue for a longer recess to allow Drs. Zimmerman and Garey additional time to prepare for trial. However, Dr. Garey ultimately did not testify, and there is no indication whatsoever that either defense counsel or Dr. Zimmerman needed additional time for preparation. Petitioner's suggestion that the defense

needed and would have benefitted from additional time is sheer speculation and, as such, is insufficient to meet his burden of proof.

Petitioner next claims that his counsel was ineffective for stipulating that petitioner was competent to stand trial and for failing to object to the trial court's finding that petitioner was competent. At a lunacy hearing on March 2, 2000, petitioner was found incompetent to stand trial and committed for treatment;[38] however, by June of 2001, experts concluded that he had been restored to competency and could proceed to trial.[39] On November 15, 2001, another lunacy hearing was held, at which time defense counsel stipulated that the experts would testify that petitioner was competent to stand trial and further stipulated that petitioner was in fact competent. Without objection, the court then found that petitioner was competent to stand trial.[40]

As evidenced by the evaluations, it is clear that the experts would in fact have testified that petitioner was competent, and he has presented no evidence rebutting their findings. That dooms his claim, because defense counsel is not ineffective for entering into a stipulation where the stipulation concerns facts that the state can easily prove and where no advantage would inure to petitioner by requiring the witnesses to testify. See, e.g., Berry v. King, 765 F.2d 451, 454 (5th Cir. 1985); Robinson v. Cooper, Civ. Action No. 12-1327, 2013 WL 2154011, at *12 (E.D. La. May 2, 2013); McGee v. Cain, Civ. Action No. 06-11360, 2007 WL 4591227, at *12 (E.D. La. Dec. 26, 2007); Parker v. 24th Judicial District Court, Civ. Action No. 06-10551, 2007 WL 2893852, at *6 (E.D. La. Sept. 27, 2007). As to counsel's failure to object to the court's competency finding, any objection would have been meritless; therefore, counsel was not

---

[38] State Rec., Vol. 11 of 13, transcript of March 2, 2000.
[39] State Rec., Vol. 2 of 13, records concerning petitioner's competency.
[40] State Rec., Vol. 11 of 13, transcript of November 15, 2001.

ineffective failing to lodge one.  Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."); see also United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

Lastly, petitioner contends that counsel provided ineffective assistance with respect to an offered plea bargain.  It is beyond question that the Sixth Amendment's right to counsel is "a right that extends to the plea-bargaining process." Lafler v. Cooper, 566 U.S. 156, 162 (2012).  Clearly, "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Missouri v. Frye, 566 U.S. 133, 145 (2012).  However, petitioner does not suggest that counsel violated that duty. Rather, he appears to be suggesting that counsel violated Lafler by erroneously advising him to reject the prosecution's offer to reduce the charge from first degree murder to manslaughter and to agree to a sentence of thirty years imprisonment, thereby resulting in him being convicted of a more serious charge at trial and receiving a longer sentence.  However, petitioner has offered no evidence showing that counsel in fact advised him to reject the plea bargain, and the transcript clearly suggests otherwise.  At the beginning of trial, the fact that petitioner rejected the plea bargain was placed on the record, with defense counsel indicating that he felt the offer was one advantageous to petitioner:

> MS. TERMINE [prosecutor]:
>     Your Honor, before a jury is called up, the State would just like to put one thing on the record.
>     There was an offer made over the weekend to defense counsel pursuant to some negotiations we had at the last setting two weeks ago wherein the State offered to the defendant a reduction in his charge of first degree murder to

manslaughter and a reduction in his bill status down to a double bill with an agreement of thirty years in the Department of Corrections.  It's my understanding that as of this morning that deal has been rejected.

MR. BOYER [defense counsel]:

     Yes, Your Honor.  Harry Boyer on behalf of the defendant.  That, in fact, was the offer made by the State and I have passed that offer along to my client along with an explanation that because of his current bill status that I believed that that was a significant reduction.  I thought the offer was in fact legitimate, and despite my discussions with the defendant concerning his bill status, he has in fact rejected the offer and I would like to have him acknowledge that.

THE COURT:

     You want to ask him some questions?

MR. BOYER:

     Mr. Williams, you and I have spoken about the offer that the State mentioned?

MR. WILLIAMS:

     Yes, sir.

MR. BOYER:

     And you heard what she said, that they offered you a reduction in the charge from first degree murder to manslaughter; is that correct?

MR. WILLIAMS:

     Yes, sir.

MR. BOYER:

     And you understand that they've offered you, in connection with that plea, that you would only have to plead as a second time offender?  You understand that?

MR. WILLIAMS:

     Uh-huh. (Affirmative response)

MR. BOYER:

     And that the deal they were offering included a sentence of thirty years; is that correct?

MR. WILLIAMS:

     Uh-huh. (Affirmative response)

MR. BOYER:

>           And you have rejected that offer?
>
>   MR. WILLIAMS:
>           Yeah.[41]

The foregoing exchange belies any suggestion that counsel advised petitioner to reject the plea

bargain.[42]  The mere fact that petitioner himself unwisely chose to reject the offer despite his

counsel's contrary advice is in no way indicative that counsel was ineffective.

        Out of an abundance of caution, the Court also notes that petitioner complains that his lack

of evidence to support some of the foregoing claims stems from the fact that he was not afforded

a post-conviction evidentiary hearing in the state courts.  However, that complaint is misplaced

because state law required no such hearing.  On the contrary, Louisiana law expressly provides for

summary disposition of post-conviction applications:  "If the court determines that the factual and

legal issues can be resolved based upon the application and answer, and supporting documents,

including relevant transcripts, depositions, and other reliable documents submitted by either party

or available to the court, the court may grant or deny relief without further proceedings."  La. Code

Crim. P. art. 929(A).  Further, the state court's decision on such matters is not reviewable in federal

court.  As one court recently explained:

>       To the extent that petitioner complains that the State Court denied his post-
>   conviction application without holding an evidentiary hearing pursuant to
>   Louisiana Code of Criminal Procedure article 929(A), that claim is not cognizable
>   in this federal habeas corpus proceeding.  In this case, the trial court determined
>   that it could properly resolve petitioner's post-conviction application pursuant to
>   article 929(A).  Federal courts "do not sit as a super state supreme court...."  Taylor
>   v. Cain, 2010 WL 6620876, *12 (W.D. La. 2010) citing Skillern v. Estelle, 720
>   F.2d 839, 852 (5th Cir. 1983).  Thus, it is not the province of this court to determine
>   if the state courts properly applied state law.  Id. citing Estelle v. McGuire, 502 U.S.

---

[41] State Rec., Vol. 11 of 13, trial transcript, pp. 8-9.
[42] The Court also notes that in the Motion for Mistrial filed at the beginning of trial, defense counsel stated that he had recommended that petitioner take the plea offer, but petitioner rejected that advice.  State Rec., Vol. 2 of 13, Motion for Mistrial.

62, 68, 112 S.Ct. 475, 480 (1991) and Narvaiz v. Johnson, 134 F.3d 688 (5th Cir. 1998). Moreover, the Fifth Circuit has repeatedly held that defects in a state habeas proceeding are not cognizable under 28 U.S.C. § 2254. Id. (and cases cited therein including Moore v. Dretke, 369 F.3d 844, 846 (5th Cir. 2004), Rudd v. Johnson, 256 F.3d 317, 319-20 (5th Cir.), cert. denied, 534 U.S. 1001, 122 S.Ct. 477, 151 L.Ed.2d 391 (2001), Trevino v. Johnson, 168 F.3d 173, 180 (5th Cir. 1999); Kidd v. Keith, 2014 WL 463056, *5 (W.D. La. 2014) (citations omitted).

Pitts v. Tanner, Civ. Action No. 6:14-cv-3145, 2015 WL 10045174, at *23 (W.D. La. Dec. 14, 2015), adopted, 2016 WL 554884 (W.D. La. Feb. 10, 2016); accord Smith v. Terrell, Civ. Action No. 09-3791, 2009 WL 4799190, at *3 (E.D. La. Dec. 7, 2009).

Lastly, the Court further notes that petitioner is not entitled to a federal evidentiary hearing to secure new evidence in support of his claims. The United States Supreme Court has expressly stated:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time *i.e.,* the record before the state court.
>
> This understanding of the text is compelled by "the broader context of the statute as a whole," which demonstrates Congress' intent to channel prisoners' claims first to the state courts. The federal habeas scheme leaves primary responsibility with the state courts. Section 2254(b) requires that prisoners must ordinarily exhaust state remedies before filing for federal habeas relief. It would be contrary to that purpose to allow a petitioner to overcome an adverse state-court decision with new evidence introduced in a federal habeas court and reviewed by that court in the first instance effectively *de novo.*
>
> Limiting § 2254(d)(1) review to the state-court record is consistent with our precedents interpreting that statutory provision. Our cases emphasize that review under § 2254(d)(1) focuses on what a state court knew and did. State-court decisions are measured against this Court's precedents as of the time the state court renders its decision. To determine whether a particular decision is "contrary to" then-established law, a federal court must consider whether the decision applies a rule that contradicts such law and how the decision confronts the set of facts that were before the state court. If the state-court decision identifies the correct

> governing legal principle in existence at the time, a federal court must assess whether the decision unreasonably applies that principle to the facts of the prisoner's case. It would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court.

Cullen v. Pinholster, 563 U.S. 170, 181-83 (2011) (citations, quotation marks, brackets, and ellipsis omitted).

In summary, to be entitled to relief, petitioner must demonstrate that, based on the record as it existed before the state court, the state court decision rejecting his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. He has not made that showing in the instant case. Accordingly, utilizing the AEDPA's doubly deferential standards of review applicable to such claims, this Court should likewise deny relief.

## **Grand Jury Selection Process**

In his final claim, petitioner contends that that his rights were violated by the manner in which the grand jury was selected. He appears to be challenging the validity of the grand jury procedures on two different grounds. His first challenge is based on State v. Dilosa, 848 So.2d 546 (La. 2003), in which the Louisiana Supreme Court held that the Louisiana statutes which established unique grand jury procedures for Orleans Parish ran afoul of the Louisiana Constitution prohibition against "local laws." His second challenge is that the grand jury selection process was tainted by discrimination based on both race and gender.

Petitioner's first challenge was asserted on direct appeal. However, in denying the claim, the Louisiana Fourth Circuit Court of Appeal held:

> We granted rehearing to consider the defendant's argument that the trial court erred in denying his second motion to quash the indictment, filed on May 17,

2002, wherein he challenged the constitutionality of the grand jury selection in Orleans Parish at the time of his indictment. After consideration of the pertinent facts in light of the applicable caselaw and supplemental briefs filed by the parties, we affirm the defendant's conviction and sentence.

***Relevant Facts***

In State v. Dilosa, 2002-2222 (La. 6/27/03), 848 So.2d 546, the Louisiana Supreme Court struck down as unconstitutional La.Code Crim. Proc. art. 412 and La.Rev.Stat. 15:114 in their entirety, the introductory phrases of La.Code Crim. Proc. arts. 413(B) and 414(B) ("In parishes other than Orleans,"), and La.Code Crim. Proc. arts. 413(C) and 414(C) in their entirety. The offending provisions together provided procedures, applicable only in Orleans Parish, for the selection of the grand jury venire, the impaneling of the grand jury, selection of the grand jury foreman, the time for impaneling grand juries and the period of service, and the rotation of judges who select and control the grand jury. The court found that the provisions were "local laws" concerning "criminal actions" which regulated the "practice" of Orleans Parish criminal courts in violation of La. Const. art. III, § 12(A)(3). Subsequently, La.Code Crim. Proc. arts. 412(A) and 413(B) were amended to remove the offending provisions, and art. 413(C) was repealed in its entirety by Acts 2001, No. 281, §§ 1 and 2, respectively.

In this case, the grand jury that indicted defendant on July 9, 1995, and the foreman of that grand jury, were selected while the applicable procedures declared unconstitutional in Dilosa, *supra* were all in effect. The defendant's second motion to quash his indictment, filed in May 2002, challenged the constitutionality of the grand jury selection process. The defendant's conviction and sentence were under direct appeal to this court at the time of the Dilosa decision.

***Discussion***

Article 921 of the Louisiana Code of Criminal Procedure provides that "[a] judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused."

The statute and codal provisions pertinent to this case were declared unconstitutional in Dilosa solely because they were local laws in violation of La. Const. art. III, § 12(A). However, the constitutional prohibition against local laws which underlies the Dilosa decision simply reflects a policy decision that legislative resources and attention should be concentrated upon matters of general interest and that purely local matters should be left to local governing authorities. Morial v. Smith & Wesson Corp., 2000-1132, p. 22 (La.App. 4 Cir. 4/3/01), 785 So.2d 1, 17; Kimball v. Allstate Ins. Co., 97-2885, p. 4 (La. 4/14/98), 712 So.2d 46, 50. As such, the substantial rights of a criminal defendant are not affected *per se* solely because he is indicted by a grand jury selected pursuant to local laws passed by the Louisiana State legislature. Thus, although the trial court erred in denying defendant's motion to quash his grand jury indictment based on the

unconstitutionality of the local laws at issue, there is no showing that the error affected his substantial rights.  Accordingly, the error does not require reversal of defendant's conviction, sentence and indictment.  Therefore, on rehearing, the defendant's conviction and sentence are affirmed.[43]

The Louisiana Supreme Court then denied his related writ application without assigning additional reasons.[44]

Petitioner then reasserted his <u>Dilosa</u> claim in the state post-conviction proceedings.  Again, he met with no success.  The state district court denied the claim, holding:

> In his second claim, Mr. Williams presents a "Motion to Quash."  Within his motion, Mr. Williams avers that because he was charged with Second Degree Murder, a constitutionally valid indictment was a jurisdictional prerequisite in the State's prosecution; however, the method of selecting grand juries in Orleans Parish is unconstitutional pursuant to the holding of <u>State v. Dilosa</u>, 848 So. 2d 546 (La. 2003).  Mr. Williams was indicted on September 7, 1995 by a grand jury.  Therefore, Mr. Williams claims that pursuant to <u>Dilosa</u>, the district court had no jurisdiction over his case.
>
> Louisiana Code of Criminal Procedure Art. 531, "Motion to quash; nature of motion," states "[a]ll pleas or defenses raised before trial, other than mental incapacity to proceed, or pleas of 'not guilty' and of 'not guilty and not guilty by reason of insanity,' shall be urged by a motion to quash."  In this case, the Motion to Quash was not timely as Mr. Williams had already been convicted.
>
> Moreover, the holding of <u>State v. Dilosa</u> would not apply to Mr. Williams' case.  In <u>Dilosa</u>, the defendants filed Motions to Quash, arguing that Louisiana Code of Criminal Procedure Article 413(C), "Method of impaneling of grand jury; selection of foreman," violated the Due Process and Equal Protection clauses of the State and Federal Constitutions.  The defendants further argued that Articles 412, 413, and 414 of the Louisiana Code of Criminal Procedure and Louisiana Revised Statute 15:114 were local laws that are prohibited under the state constitution.[FN 17]
>
> [FN 17] <u>State v. Dilosa</u>, 848 So. 2d 546, 584 (La. 2003).
>
> The Louisiana Supreme Court found that "[t]he questioned statutes' regulation and selection of grand juries by Orleans Parish criminal courts clearly 'concern[ ] … criminal actions' and 'regulat[e] the practice … of [those]

---

[43] <u>State v. Williams</u>, 866 So.2d 296, 297-99 (La. App. 4th Cir. 2004) (footnotes omitted); State Rec., Vol. 12 of 13.

[44] <u>State v. Williams</u>, 876 So.2d 831 (La. 2004); State Rec., Vol. 12 of 13.  The United States Supreme Court thereafter likewise denied his related petition for writ of certiorari.  <u>Williams v. Louisiana</u>, 543 U.S. 1062 (2005).

courts.'"[FN 18]  As such, the Supreme Court held that "[b]ecause the complained of statutes are local laws which concern the practice of the criminal courts in Orleans Parish, we conclude that they are unconstitutional."[FN 19]  Although the Supreme Court found that the local laws used to impanel only Orleans Parish grand juries at the time were unconstitutional, the Supreme Court held that "[t]he unconstitutionality of portions of the statutes does not render the entirety of the statutes unenforceable because the remaining portions may be severed."[FN 20]

[FN 18]  <u>Dilosa</u>, 848 So.2d at 511.

[FN 19]  <u>Id</u>.

[FN 20]  <u>Id</u>.

In addressing the holding of <u>Dilosa</u>, in <u>State v. Williams</u>, 866 So. 2d 296 (La.App. 4 Cir., 2004), the Fourth Circuit held that "[t]he unconstitutional prohibition against local laws, which underlies the <u>Dilosa</u> decision, simply reflects a policy decision that legislative resources and attention should be concentrated upon matters of general interest and that purely local matters should be left to local governing authorities."[FN 21]  The Fourth Circuit stated "….the substantial rights of a criminal defendant are not affected *per se* solely because he is indicted by a grand jury selected pursuant to local laws passed by Louisiana legislature."[FN 22] Therefore, although a portion of the statute applicable to impaneling grand juries was found to be unconstitutional vis-à-vis the <u>Dilosa</u> ruling, based on the reasoning of <u>Williams</u>, Mr. Williams' 1995 indictment and subsequent conviction cannot be overturned under the holding of <u>Dilosa</u>.  Accordingly, the Court denies this claim.

[FN 21] <u>State v. Williams</u>, 866 So. 2d 296 (La.App. 4 Cir., 2004), citing <u>Morial v. Smith & Wesson Corp.</u>, 2000-1132, p. 22 (La. App. 4 Cir. 2001) 785 So. 2d 1, 17; <u>Kimball v. Allstate Ins. Co.</u>, 97-2885, p.4 (La. 1998), 712 So. 2d 46, 50.

[FN 22]  <u>Id</u>.[45]

Petitioner's related writ applications were then likewise denied without additional reasons assigned by the Louisiana Fourth Circuit Court of Appeal[46] and the Louisiana Supreme Court.[47]

---

[45] State Rec., Vol. 13 of 13, Judgment dated May 6, 2014, pp. 5-7 (footnote omitted).

[46] <u>State v. Williams</u>, No. 2014-K-0704 (La. App. 4th Cir. July 28, 2014); State Rec., Vol. 13 of 13.

[47] <u>State *ex rel.* Williams v. State</u>, 174 So.3d 1145 (La. 2015); State Rec., Vol. 13 of 13.

The fatal flaw of this claim on federal habeas review is that <u>Dilosa</u> was based on state, *not* federal, law.  As United States District Judge Sarah S. Vance has explained:

> In <u>Dilosa</u>, the Louisiana Supreme Court found that laws governing the selection of the grand jury venire and foreperson in Orleans Parish violated the Louisiana constitution.  The fact that those provisions violated state law is of no moment in a federal habeas proceeding.  Federal habeas relief is intended only to remedy violations of the Constitution and laws of the United States; mere violations of state law are not sufficient grounds.  28 U.S.C. § 2254; <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1982).  As <u>Dilosa</u> addressed only state constitutional rights, he is not entitled to federal habeas relief on this claim.  <u>See</u> <u>Parker v. Cain</u>, 445 F.Supp.2d 685, 697 n.23 (E.D. La. 2006) (finding that petitioner's claim under article 413(C) was not a proper ground for federal relief).

<u>Baker v. Cain</u>, Civ. Action No. 05-3772, 2007 WL 1240203, at *9 (E.D. La. Apr. 26, 2007).

Therefore, to the extent that petitioner is in fact asserting a <u>Dilosa</u> claim, relief is not warranted.

However, in the state post-conviction proceedings, petitioner also argued that grand jury selection process was tainted by discrimination based on both race and gender.  In denying relief, the state district court focused on petitioner's <u>Dilosa</u> challenge without explicitly addressing the contention of race and gender discrimination.[48]  Petitioner's related writ applications were then likewise denied without additional reasons assigned by the Louisiana Fourth Circuit Court of Appeal[49] and the Louisiana Supreme Court.[50]

---

[48] State Rec., Vol. 13 of 13, Judgment dated May 6, 2014, pp. 5-7 (footnote omitted).  The fact that a state court has not expressly addressed a claim in its written opinion does not lead to a presumption that the court failed to consider the claim on the merits; rather, there is a rebuttable presumption to the contrary.  <u>Johnson v. Williams</u>, 133 S. Ct. 1088, 1094-96 (2013) ("[I]t is not the uniform practice of busy state courts to discuss separately every single claim to which a defendant makes even a passing reference.  On the contrary, there are several situations in which state courts frequently take a different course. … When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits – but that presumption can in some limited circumstances be rebutted.").  Petitioner has made no attempt to rebut the presumption in this case.

[49] <u>State v. Williams</u>, No. 2014-K-0704 (La. App. 4th Cir. July 28, 2014); State Rec., Vol. 13 of 13.

[50] <u>State ex rel. Williams v. State</u>, 174 So.3d 1145 (La. 2015); State Rec., Vol. 13 of 13.

As the state has noted in its response in this proceeding, petitioner presented no independent evidence in support of his discrimination claim; rather, he based his claim on a finding of discrimination by the Orleans Parish Criminal District Court in the unrelated case of Eric Fleming and Kevin Trainor.  Petitioner's reliance on the state district court's ruling in that case was misplaced for several reasons, not the least of which is that the decision was *reversed on appeal* in State v. Fleming, 846 So.2d 114 (La. App. 4th Cir. 2003) (finding that the "[d]efendants failed to satisfy their burden of establishing a *prima facie* case of purposeful discrimination as to the selection of either the grand jury itself or the foreperson"), writs denied, 860 So.2d 1132 (La. 2003).

Other inmates have similarly attempted to rely on the Fleming/Trainor district court holding and evidence in federal habeas corpus proceedings.  However, those attempts have been rejected because, like the Louisiana Fourth Circuit Court of Appeal, the federal jurists have routinely found the Trainor/Fleming evidence incomplete and insufficient to establish a prima facie showing of discrimination.  See Valentine v. Cain, Civ. Action No. 11-2380, 2012 WL 380355, at *9-12 (E.D. La. Jan. 12, 2012) (Moore, M.J.), adopted, 2012 WL 380352 (E.D. La. Feb. 6, 2012) (Engelhardt, J.); Bowens v. Cain, Civ. Action No. 05-5714, 2011 WL 4381540, at *6-8 (E.D. La. Aug. 5, 2011) (Chasez, M.J.), adopted, 2011 WL 4381499 (E.D. La. Sept. 20, 2011) (Lemelle, J.); Jones v. Cain, Civ. Action No. 07-3816, 2010 WL 3924010, at *23-25 (E.D. La. Sept. 10, 2010) (Roby, M.J.), adopted, 2010 WL 3909203 (E.D. La. Sept. 28, 2010) (Engelhardt, J.); Lindsey v. Cain, Civ. Action No. 05-1593, 2009 WL 1575466, at *1-2 and *8-12 (E.D. La. May 29, 2009) (Duval, J., adopting the recommendation of Moore, M.J.).  For the same reasons

as explained in detail in <u>Valentine</u>, <u>Bowens</u>, <u>Jones</u>, and <u>Lindsey</u>, petitioner's attempt to rely on this incomplete evidence to establish a federal violation should likewise be rejected in this proceeding.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Glenn Leo Williams be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[51]

New Orleans, Louisiana, this twelfth day of May, 2017.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[51] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.